Dempsey *v.* Kipp.

[FOURTH DEPARTMENT, GENERAL TERM, at Oswego, May 7, 1872. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

---

## DANIEL DEMPSEY AND MARY DEMPSEY *vs.* JAMES N. KIPP.

As commissioners of highways have no power to lay out a private road for one person, over the lands of another, without the consent of the latter, it is his consent, alone, which gives any force to the acts of the commissioners.

Hence the act of consent, in order to be valid, and divest a party of a substantial right, for the benefit of another, must be, if not in strict, at least in substantial accordance with the consent. Any material and substantial departure from it will render the act nugatory, as though no consent whatever had been given.

A consent that a private road may be laid out on the line between the farm of the party consenting, and the adjoining farm, one half to be on each farm, will not authorize or justify the laying out of the whole road on the land of such consenting party.

Where a party only gave his consent to the laying out of a private road as it was *applied for*, and did not consent to it as it was in fact laid out and located by the commissioners; nor did it appear that he saw the order of the commissioners, when it was made, or knew its contents; *Held* that upon discovering, afterwards, that the road had been laid out, not in accordance with the consent, but in a manner materially different, either he, or his grantees, had the right to close the road and forbid and prevent all travel over it.

APPEAL, by the plaintiffs, from a judgment entered on the report of a referee. The facts are sufficiently stated in the opinion.

*Benton & Ten Eyck,* for the appellants.

*F. O. Mason,* for the respondent.

*By the Court,* JOHNSON, J. The action was brought to recover damages for the obstruction of a private road, which the plaintiffs claimed to have over the land of the defendant. The defendant's premises are situated south of the plaintiffs', and between the latter and the public highway. On the west of the defendant's premises, and adjoining thereto, is another farm, extending up to the plaintiffs' southeast corner, which, on the 16th of March, 1842, was owned by one Miller. At the date aforesaid the plaintiffs' premises were owned and in possession of one Eshenom, from whom the plaintiffs derive title, and the defendant's premises were owned and occupied by one Amsberger, from whom the defendant derives title. On the 9th of March, 1842, the plaintiffs' premises were conveyed to Eshenom by Jacob Leddick, who, at the time, agreed by parol with Eshenom, his grantee, to procure a private road to be laid out from the premises so conveyed, on the line between Miller and Amsberger, and through the lands of each, to the public highway.

On the 16th of March, before mentioned, Leddick, who still retained possession of the premises so conveyed to Eshenom, made an application in writing to the commissioners of highways of the town in which all the lands before mentioned were situated, to lay out a private road in said town " for my use," from the public highway, north, " on the line of said lots, through the lands of John Amsberger and Thomas Miller, to the south line of the farm now owned by John Eshenom, and occupied by me."

A jury of twelve freeholders were accordingly called and sworn to view the premises, who, on the 23d of March, 1842, certified that, in their opinion, it was "necessary and proper to lay out a private road for the use of Jacob Leddick, pursuant to said application."

On the same day, last mentioned, the commissioners of highways met and determined to lay out said road one rod in width, on the line between Amsberger and Miller, as appears by the order, "through the lands of John Amsberger and Thomas Miller, to the south line of the farm now owned by John Eshenom, and occupied by Jacob Leddick." Then follows, as part of the order, a descriptive survey of the road so laid out, which begins on the line between Amsberger and Miller, and follows it up to the plaintiffs' premises, and orders "that the line above described shall be the west line of the road." By this, as will be seen, the road was located wholly on the land of Amsberger, and no part of it on the land of Miller, and did not run through the lands of Amsberger and Miller, according to the application and the certificate of the jury, and the determination of the commissioners as declared in that part of the order preceding the survey. Immediately, or soon after the road was laid out, the line fence between Miller and Amsberger was moved west about eight feet, upon the land of Miller, and the road, one rod in width, was opened, one half on the land of Miller, and the other half on the land of Amsberger, and worked, to some extent. The road, as thus opened, was used by those occupying the Eshenom farm, up to 1848 or 1849, when a subsequent grantee of Miller removed the fence on the west side of the road, back upon the line between the two farms, and into the centre of the road as it had been opened and used. Upon this being done, the owners and occupants of the Amsberger farm erected a gate across the road where it entered the highway, and extended cross-fences over the road up to the Miller line

fence, thus obstructing the passage over said road. These fences were torn down by the occupants of the Eshenom farm, and replaced by those of the Amsberger farm, and the land ploughed and cultivated up to the line.

This state of things continued up to the time of the commencement of the action, the defendant denying that the plaintiffs had any legal right to cross his land.

On this state of facts, the question is presented, whether any lawful right of way over the premises of Amsberger was obtained either by Leddick or Eshenom, or any occupant of those premises, by the act of the commissioners of highways, in laying out the road as it was laid out by them.

Under the law as it existed at the time the road was laid out, the commissioners had no power to lay out a private road for one person, over the lands of another, without the consent of such other. The statute authorizing it was held to be unconstitutional and void. (*Taylor* v. *Porter*, 4 *Hill*, 140.) But if the road, in such a case, was laid out with the consent of the owner, it became a lawful private road, even though such consent was by parol. (*Baker* v. *Braman*, 6 *Hill*, 47.)

Here the consent of Amsberger, if any was given, was by parol, and the referee has found, as a fact, that he only gave his consent to the laying out of the road as it was applied for by Leddick, and did not consent to it as it was in fact laid out and located by the commissioners. His consent, therefore, was to a road one rod in width, on the line between him and Miller, one half on each side of the line. It was his consent alone which gave any force or validity to the acts of the commissioners, as the decisions hold. This being so, the act, in order to be valid, and divest a party of a substantial right, for the benefit of another, must be, if not in strict, at least in substantial accordance with the consent. Any material and substantial departure from it would render the act nugatory, as

Dempsey *v.* Kipp.

though no consent whatever had been given. It is plain enough that a consent that a private road might be laid out on the line between the farm of the party consenting and the adjoining farm, one half to be on each farm, would not authorize or justify the laying out of the whole road on the land of such party.

Passing by the question, therefore, whether this road, had it been lawfully laid out, would have attached as an appurtenant to the Eshenom farm, which, under the circumstances, may be regarded as somewhat doubtful, it is quite clear that the road, as laid out, was beyond and without the authority or consent of the owner of the land over which it passed, and consequently without any authority of law, and conferred no legal right of way upon the applicant, or any one else.

The consent, in such a case, and the nature and extent of it, are the material facts to be ascertained from the evidence, and I think the finding of the referee in this regard is sustained by the testimony before him. Indeed, the written application, the certificate of the jury, with the acts of the parties interested, immediately after the road was laid out, show quite conclusively how it was intended and understood by them all.

It does not appear that Amsberger saw the order of the commissioners when it was made, or knew its contents; and when it was discovered, afterwards, that the road had been laid out, not in accordance with the consent, but in a manner materially different, either Amsberger or his grantees had the right to close the road, and forbid and prevent all travel over it. This disposes of the case upon the merits.

I am of the opinion that the testimony, as to what was said between Lambert and the witness Kipp, was improperly received. But it is certain that it could, by no possibility, have done any harm to the plaintiffs. It did not bear upon the controlling fact, the consent of Amsberger

to the laying out of the road, as it was laid out by the commissioners.

That question being settled in the negative, was conclusive as to the legal rights of the parties; and whether that evidence was received or rejected, could not be of the slightest consequence.

. The judgment is right, and must be affirmed.